STATE OF TEXAS. *v.* HUMBLE OIL & REFINING COMPANY.

No. 8034. Decided March 10, 1943.
Rehearing overruled April 14, 1943.
(169 S. W., 2d Series, 707.)

*Gerald C. Mann,* Attorney General, *Geo. W. Barcus, Ocie Speer, Cecil C. Rotsch,* and *Billy Goldberg,* Assistants Attorney General, for petitioner.

It was error for the court below to hold that defendant was, entitled to an offset as against the State's claim for taxes for January, 1936, moneys that it had erroneously paid as taxes prior to May, 1935, such offset claim not being incident to or growing out of the plaintiff's claim for taxes due the State for the month of January, 1936. Producers & Refiners Corp. v. Heath, 81 S. W. (2d) 533; Austin Natl. Bank v. Sheppard, 123 Texas 272, 71 S. W. (2d) 242; Adair v. McFarlin, 28 Okla. 633, 115 Pac. 787.

*T. H. McGregor*, of Austin, *Nelson Jones, Lee Hill, D. H. Gregg, J. Q. Weatherly, E. E. Townes* and *R. E. Seagler*, all of Houston, for respondent.

It was not error for the Court of Civil Appeals to hold that the defendant oil company was entitled to offset the underpayment by the overpayment. State v. Sancho's Heirs, 44 S. W. 527; Central Life Ins. Co. v. Mann, 138 Texas 242, 158 S. W. (2d) 477; Fort Worth Cavalry Club v. Sheppard, 125 Texas 339, 83 S. W. (2d) 660.

*Small, Arney & Small*, of Austin, filed brief as amicus curiae.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was filed in the District Court of Travis County, Texas, by the State of Texas, through the Attorney General, against Humble Oil & Refining Company, hereinafter called Humble, to recove r $10,791.42, plus interest and penalties, claimed by the State to be due it by Humble as gross production taxes, as levied by Articles 7057a and 6032, Vernon's Texas Statutes. Trial in the district court resulted in a judgment for Humble. This judgment was affirmed by the El Paso Court of Civil Appeals, to which this case was transferred by this Court. The case is before us on writ of error granted on application of the State.

For the purpose of this opinion, it may be stated that Humble owed the State, as gross production taxes on oil for the month of January, 1936, the sum of $119,973.96. Prior to May 30, 1935, Humble had paid the State, as gross production taxes on oil, the sum of $10,791,42 that it did not owe. We assume that the sum last mentioned was paid under duress and under such circumstances that Humble has a just and valid claim against the State for its recovery. Humble in due time paid the State $109,182.54 on the above claim of $119,973.96. At the time of making such payment Humble contended that the sum paid bal-

anced the State's gross production tax claim against it for July, 1936, because it was then entitled to offset its claim for overpayment against the State's claim against it. ·

At this point we deem it pertinent to quote Subdivision 13 of Section 1 of Article 7057a, Vernon's Texas Statutes. This is Subdivision 13 of Section 1 of H. B. 89, Chap. 358, p. 900, Acts 44th Leg., 1935. Such subdivision reads as follows:

"(13). When it shall appear that a taxpayer to whom the provisions of this Act shall apply has erroneously paid more taxes than were due during any taxpaying period either on the account of a mistake of fact or law, it shall be the duty of the State Comptroller to credit the total amount of taxes due by such taxpayer for the current period with the total amount of taxes so erroneously paid."

An examination of the above-quoted statute will disclose that it is a part of the law which levies a gross production tax on oil. The statute quoted became effective May 30, 1935, which was after Humble paid the $10,791.42 wrongfully demanded of it.

Humble contends that the above-quoted statute authorizes it to offset the gross production oil taxes due by it for the month of January, 1936, by the sum of $10,791.42, illegally demanded of and paid by it as gross production oil taxes prior to the effective date of such statute. The State contends that such statute cannot operate to authorize such offset, because it speaks prospectively, and not retrospectively. It is evident that a decision of this question determines whether the above-quoted statute operates to confer any right of offset in this case.

■ It is the settled law of this State, as well as the law generally, grounded on public policy, that, in the absence of a statute authorizing it, in an action by the State or any municipality for taxes, offsetting of an indebtedness due by the State or municipality to the tax debtor will not be allowed. Bates v. Republic of Texas, 2 Texas 616; Dallas Joint Stock Land Bank v. Ellis County Levee Improvement District No. 3, 55 S. W. (2d) 227; 57 C. J., 381; 24 R. C. L., 817; Cooley on Taxation (4th ed.), sec. 1349; Village of Charlotte v. Keon, 207 N. Y. 346, 100 N. E. 1116, 46 L. R. A. N. S. 135; Camden v. Allen, 26 N. J. L., 398; Hedge v. City of Des Moines, 141 Iowa 4, 119 N. W. 276; Shelton v. Blount County, 202 Ala. 620, 81 So. 562; State v. Board of Equalization, 67 Mont. 340, 215 Pac. 667; Darby v. City of Vidalia, 168 Ga. 842, 149 S. E. 223.

■ An examination of the above-quoted statute will disclose that it very plainly allows offsets such as is here claimed by Humble, if it speaks retrospectively; that is to say, if it operates to allow taxes paid on account of a mistake of fact or law before its effective date to be offset against taxes due after its effective date.

After a very careful examination of the authorities, we have reached the conclusion that the above-quoted statute cannot be applied retrospectively. It is the law of this State, and the law generally, that, in the absence of any special indication or reason, a statute will not be applied retrospectively, even when there is no constitutional impediment against it. Stated in another way, it is the rule that statutes will not be applied retrospectively unless it appears by fair implication from the language used that it was the intention of the Legislature to make it applicable to both past and future transactions. Rockwall County v. Kaufman County, 69 Texas 172, 6 S. W. 431; Pursuer v. Pool, 145 S. W. (2d) 942, and many authorities there cited; Mississippi C. Ry. Co. v. City of Hattiesburg, 163 Miss. 311, 141 So. 897; Fort Motor Co. v. State, 59 N. D. 792, 231 N. W. 833; State v. Ward, 189 Okla 532, 118 Pac. (2d) 216; Freeman v. Terrell, 115 Texas 530, 284 S. W. 946. When we apply this rule to this statute, we find no words contained therein which indicate a legislative intent to apply its provisions to past transactions.

In Mississippi C. Ry. Co. v. City of Hattiesburg, supra, the opinion shows that the Legislature of Mississippi passed a law authorizing the refund of taxes erroneously paid, whether paid under protest or not. A taxpayer contended that it was entitled to a refund under this statute for taxes paid prior to its enactment. The opinion holds that the act had no application except prospectively.

In Ford Motor Co. v. State, supra, the opinion shows that in 1923 the Legislature of North Dakota enacted an income tax law. The law itself was an amendment to the income tax laws of North Dakota theretofore existing. The 1923 act provided that a taxpayer could apply to the tax commissioner for a revision of the tax assessed against him at any time within two years from the filing of the return or from the date of the notice of the assessment of any additional tax. The law also provided that the tax commissioner could grant a hearing thereon, and if upon such hearing he should determine that the tax was excessive or incorrect, he could resettle the same according to the law and the facts, and adjust the computation of the tax

accordingly. The Supreme Court of North Dakota, in passing on the above statute, held that the 1923 act was not applicable to excessive or illegal income tax payments enacted under the prior law.

In State v. Ward, supra, the Supreme Court of Oklahoma had before it a statute providing a remedy or method by which gross production taxes illegally or erroneously levied and collected could be refunded. It was held that such act did not apply retrospectively, and did not apply to taxes of the same class paid before its effective date.

Humble contends that it has the right of offset in this case, irrespective of the above-quoted statute, because of the general rule announced in Anderson, Clayton & Co. v. State, 122 Texas 530, 62 S. W. (2d) 107, that:

"But the authorities sustain the further rule that where a state voluntarily files a suit and submits its rights for judicial determination it will be bound thereby and the defense will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense by answer or cross-complainant germane to the matter in controversy. Gunter v. Atlantic Coast Line Railroad Co., 200 U. S. 252, 26 Sup. Ct. 252, 50 L. Ed. 477; Clark v. Barnard, 108 U. S. 436, 2 Sup. Ct. 878, 27 L. Ed. 780; State v. Kilburn, 81 Conn., 9, 69 Atl. 1028, 129 Am. St. Rep. 205; State v. Zanco's Heirs, 18 Texas Civ. App. 127, 44 S. W. 527 (writ denied) ; 25 R. C. L. sec. 46, p. 411."

The opinion of the Court of Civil Appeals seems to hold that the above rule applies in this case, because the offset demanded by Humble involves a matter "dependent upon, connected with, or that has grown out of the transaction which constitutes the subject matter of the suit." In this connection, we quote as follows from such opinion:

"The statute here made the defendant responsible, as the first purchaser, and liable for the taxes collected, and constituted it a sort of involuntary collector of taxes. The levy is a blanket levy and the taxes are due and payable from month to month as the oil is produced. The relationship between the plaintiff and defendant and the transactions carried on are continuing. There can be no question about the justness of defendant's claim and the justice of its cause. We think justice here requires an application of another generally accepted principle of law, to-wit: When the State enters the courts it goes in as any other

litigant. Ex parte Hughes, 133, 122 Texas 530, 505, at page 517, 129 S. W. (2d) 270; Anderson, Clayton Co. v. State, 122 Texas 530, 62 S. W. (2d) 107, and the defendant is entitled to setoff against its claim any matter dependent upon, connected with, or that has grown out of the transaction which constitutes the subject matter of the suit. State v. Young, 107 Minn. 71, 119 N. W. 792. Many cases from divers jurisdictions might be cited."

We have no fault to find with the rule of law announced in the Anderson, Clayton & Co. opinion, when applied in a proper case. It, however, can have no application in this suit, because to here apply it would allow it to abolish the rule that taxes due the State cannot be offset by an indebtedness due by the State to the tax debtor. Furthermore, here we have no offset claim which is dependent upon, connected with, or grew out of the subject matter of this suit. It is true that the subject matter of this suit is gross production taxes on oil, and the subject matter of the offset claim is the same character of taxes. But the one claim has no connection with the other, and the two claims are entirely independent of each other. The claim made the basis of this suit is taxes owed by Humble on its gross oil production for January, 1936. The claim for offset is for taxes of the same character, but for other months, and even other years. The two claims are not even involved in the same report.

Section 6a of Chapter 214, Acts Regular Session 43d Legislature, 1933, page 639, effective June 7, 1933, reads as follows:

"Sec. 6a. Where it shall appear that any taxpayer to whom the provisions of this Act shall apply has erroneously paid more taxes than were due during any previous taxpaying period for the payment of such taxes, either on account of an invalid statute or by reason of mistake of fact or law, such tax collecting officer shall have the authority, and it is hereby made his duty, to credit the total amount of taxes due by such taxpayer for the current period with the total amount of taxes so erroneously paid."

Section 6a, supra, was unconditionally repealed by Chapter 68, Acts Second Called Session 43d Legislature, 1934, page 163. This repealing act became effective March 16, 1934.

■ Under the provisions of Section 6a, supra, any part of the $10,791.42 illegal taxes paid by Humble during the period while such statute remained in force could have been offset against any valid gross production taxes on oil paid by Humble which

accrued during the same period. It appears that a part of the $10,791.42 illegal taxes here involved may have been paid while Section 6a, supra, was in force. On oral argument it was suggested that the repeal of Section 6a could not operate to destroy the offset rights of Humble which accrued and vested during the period Section 6a, supra, was in force. We are aware of the general rule that the repeal of a statute cannot operate to destroy or impair rights which vested thereunder prior to repeal. Dawson v. McLeary, 87 Texas 524, 29 S. W. 1044. In spite of this rule, we are unable to see how it can be said that the right of offset created or given by Section 6a, supra, which gave the right to offset taxes illegally collected during the period such statute was in effect against valid taxes which accrued during the same period, can operate to give or preserve the right to offset illegal taxes paid while such offset statute was in effect against valid taxes which did not accrue until after the repeal of such offset statute. In this connection, it is evident that the same rule of statutory construction which prevents Section 13, supra, now in force, from speaking retrospectively, also prevented Section 6a, supra, from so speaking.

The judgments of the Court of Civil Appeals and district court are both reversed, and judgment is here rendered for the State for the full amount of taxes sued for, plus interest and penalties.

Opinion delivered March 10, 1943.

Rehearing overruled April 14, 1943.